**WIRTH, LTD., Appellant,**

v.

**PANHANDLE PIPE AND STEEL, INC., Appellee.**

**No. 1195.**

Court of Civil Appeals of Texas, Tyler.

March 22, 1979.

Larry W. Bass, Bass & Bass, Houston, for appellant.

Don M. Dean, Underwood, Wilson, Sutton, Berry, Stein & Johnson, Amarillo, for appellee.

MOORE, Justice.

This is a suit for damages for breach of a contract. Appellant, Wirth, Ltd. (Wirth), brought suit against appellee, Panhandle Pipe and Steel, Inc. (Panhandle), alleging that Panhandle, acting by and through its President, Maurice Seliger, contracted with Wirth for the purchase of 390 tons of steel products, or alternatively, contracted for the purchase of 300 tons of steel products, to be rolled by European steel mills and to be delivered at the port of Houston in Harris County, Texas. Wirth alleged that after it had placed Panhandle's order for the steel products with the foreign mills, Panhandle notified Wirth that it would no longer go forward with the contract and would refuse to accept delivery of the steel; that when the steel arrived at the port of Houston, Panhandle refused to accept delivery and Wirth was compelled to sell the steel on the open market; and that as a result of the breach of the contract Wirth suffered damages in the amount of $98,266.67. together with other incidental damages.

Panhandle denied generally the allegations of the petition and specially denied the existence, either in fact or in law, of any contract with Wirth for the purchase of steel products. Panhandle alleged that Wirth failed to accept its offer within a reasonable time and that when Wirth finally did send its "order acknowledgment" some 90 days after the order, the delivery times thereof differed from the order and that same was returned to Wirth unsigned within 10 days after receipt thereof. Panhandle alleged that the "order acknowledgment" differed in material respects from the quantity and quality of the steel ordered, and therefore did not amount to an unqualified acceptance of its order. Panhandle further alleged that the "order acknowledgment" amounted to a repudiation of the offer because it showed that the steel was not to be delivered until sometime after the last quarter of 1974 which was contrary to the previous agreement between the parties. Panhandle further alleged that even if a contract existed, no liability at-

tached because Wirth breached its duty to resell the steel in a commercially reasonable manner at the time it arrived at the port of Houston. After a trial before the court, without a jury, the trial court entered a take-nothing judgment against Wirth, from which ruling and judgment Wirth perfected this appeal.

We affirm.

The record reveals that Wirth, through its sales representative, W. V. Garrett, in Houston, Texas, had established with Panhandle, through its President, Louis Seliger, a general course of business in which Wirth solicited orders for steel products to be rolled in foreign markets. The general course was for Mr. Garrett to contact Mr. Seliger on the telephone and solicit from him an offer to purchase certain steel products. Garrett had no authority to bind Wirth in the transaction. Contracts in connection with the purchase and sale of the steel were to be finalized by Wirth's Montreal office. Once an offer was given on the phone by Mr. Seliger to Mr. Garrett, Mr. Garrett would telex the offer to the home office of Wirth in Montreal, Canada. Upon receipt of that telex at the home office in Montreal, Wirth would telex its various suppliers, being the mills in Europe, an offer on behalf of Panhandle to purchase the products from the foreign mills. The foreign mills would then telex Wirth in Montreal that the offer was either accepted or was unacceptable. Wirth, in turn, would then telex such information to Mr. Garrett in Houston who would immediately pass that information on to Panhandle, such information being passed on by telephone. In the event the mill had accepted the order, Mr. Garrett would inform Mr. Seliger that the order had been booked for the account of Panhandle and would then request that Seliger issue a purchase order. Panhandle would then issue its purchase order and mail it to Mr. Garrett in Houston, Texas. Upon receipt of the purchase order, Mr. Garrett would forward the same to Wirth at its Montreal office. After the receipt of the purchase order in Montreal, Wirth would issue an order acknowledgment and forward the same to Mr. Garrett in Hous-

ton. Garrett would then forward the acknowledgment to Mr. Seliger. Once the steel products arrived in Houston, Panhandle would make arrangement for receiving delivery of the steel and pay for the same upon taking delivery.

The transaction made the basis of the present suit arose from a telephone conversation on July 18, 1974, in which Garrett called Seliger to solicit an order for steel. Garrett testified that Seliger verbally agreed to purchase 390 tons of steel and that he forwarded such information on to the Montreal office. Seliger denied he agreed to purchase any steel at that time. He testified that the telephone conversation amounted to nothing more than a discussion of the availability of the steel and that he never promised Garrett that he would order 390 tons of steel. He testified that no offer to purchase the steel was made until he subsequently forwarded Garrett his written purchase order for 300 tons of steel on July 27, 1974. He testified that after hearing nothing from Wirth, on October 21, 1974, he mailed a letter to Wirth revoking the offer. He testified that he finally received an "acknowledgment of the order" on November 5, 1974, with a request that it be signed and returned to Wirth. He returned the order acknowledgment to Wirth unsigned because it differed materially with Panhandle's order. It had extended the delivery date beyond the end of the fourth quarter of 1974.

At the request of appellant, the trial court filed extensive findings of fact and conclusions of law. The findings of fact consist of 41 separate findings, many of which include various additional findings. In view of the disposition we make of the case, it will not be necessary to restate these findings in detail. Generally, the court found that (a) no oral contract was consummated; (b) Panhandle's order for the steel was never accepted by Wirth; (c) that even if Wirth's "order acknowledgment" amounted to an acceptance of Panhandle's order, such acceptance was not made within a reasonable time; (d) that time was of the essence between the par-

ties; (e) that Wirth's written "order acknowledgment" which Panhandle received on November 5, 1974, materially differed from Panhandle's written order; (f) that Panhandle's order for the steel was made on the condition that the steel was to be delivered at the port of Houston not later than the fourth quarter of 1974; (g) that even if a contract existed between the parties, it was repudiated by Wirth's "order acknowledgment" showing that the bulk of the steel was not to be delivered until after January 1, 1975; (h) that the alleged contract relied on by Wirth was unenforceable because it failed to comply with the Statute of Frauds' provision of sec. 2.201 of the Texas Business & Commerce Code; (i) that the resale of the steel by Ashworth when it arrived in Houston was not made in a commercially reasonable manner; and (j) that there was no evidence establishing the market price of the steel at the time Wirth resold the same.

The conclusions of law were as follows:

1. Plaintiff and Defendant did not, either orally or in writing, reach an agreement with respect to the purchase and sale of any of the subject steel products sufficient to form a contract.

2. No writing signed by Defendant sufficient to indicate that a contract for sale had been made having been shown by the evidence, and no writing in confirmation of a contract sufficient against Plaintiff having been received by Defendant without written notice of objection to its contents within ten days, Plaintiff's rights under any alleged contract are unenforceable under the statute of frauds as set forth in Section 2.201 of the Texas Business & Commerce Code.

3. Even if a contract for the sale of steel products existed prior to or on November 5, 1974, it was on the basis of arrival of the steel products in Houston prior to the end of the fourth quarter of 1974. Plaintiff's statement of later delivery dates in its "order acknowledgment" constituted an anticipatory repudiation of its obligations within the meaning of Texas Business & Commerce Code, Section 2.610 and Defendant under Section 2.711 thereof had the right to cancel and did cancel the contract, if any, and rightfully rejected all steel.

4. Plaintiff's resale of the subject goods was not made in a commercially reasonable manner within the meaning of Texas Business & Commerce Code 2.706. Plaintiff offered no evidence of the market price for the subject steel products at the time and place for tender under the contract, if any, within the meaning of Section 2.708 of the Texas Business & Commerce Code which establishes his measure of damages, and Plaintiff's case therefore fails for want of proof of damages.

5. Plaintiff is entitled to recover nothing from the Defendant because Plaintiff has failed to prove by a preponderance of the evidence either:

(1) the making of a contract; or

(2) the breach thereof by Defendant; or

(3) the damages, if any, sustained by Defendant.

■ Appellant seeks a reversal by six points of error. In the third point appellant contends that "the trial court erred in rendering findings of fact numbers 1 through 41 because such findings of fact are against the greater weight and preponderance of the evidence." In the fourth point, it is contended that "the trial court erred in rendering findings of fact numbers 1 through 41 because there is no evidence in the record to support such findings of fact." Panhandle attacks the sufficiency of Wirth's brief on the ground that both of these points are multifarious and too general to be considered by the court because neither point refers to any particular fact finding but rather attacks all such findings globally in their entirety. We have concluded that Panhandle's contention is well taken and must be sustained.

Rather than presenting its statement, argument and authorities separately under each point, appellant combines its statement, argument and authorities under all six of its points of error. The statement,

argument and authorities consist of twenty-four pages discussing the evidence as well as numerous sections of the Texas Business & Commerce Code. Only one case is cited. At no point in the brief does appellant give the number of any particular fact finding which it contends is not supported by the evidence or is contrary to the overwhelming weight and preponderance of the evidence. Nowhere in the brief is any one of the forty-one findings of fact referred to by its number. Contrary to the briefing rules each of the points here attack more than one ruling made by the court. Both points constitute an attack on the entire verdict rendered by the trial judge. Thus, the statement and argument provide no basis, except in a vague and general way, for this court to intelligently rule on whether a particular finding is unsupported by the evidence or whether the finding is against the great weight and preponderance of the evidence. We are therefore of the opinion that both the third and fourth points of error are multifarious or too general to comply with the requirements of Rule 418, Tex.R.Civ.P., and therefore should not be considered on appeal. *Great American Insurance Co. v. Langdeau*, 379 S.W.2d 62, 74 (Tex.1964); *Texas Employer's Ins. Assoc. v. Hawkins*, 369 S.W.2d 305 (Tex.1963); *Hudspeth v. Hudspeth*, 206 S.W.2d 863, 867–69 (Tex.Civ.App.—Amarillo 1947, no writ history); *Heldt v. McCreary*, 399 S.W.2d 181, 184 (Tex.Civ.App.—Corpus Christi 1966, no writ history); *Commercial Standard Ins. Co. v. Southern Farm Bureau Casualty Ins. Co.*, 509 S.W.2d 387, 392 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.); *Hosack v. Cassidy*, 543 S.W.2d 202, 205–06 (Tex.Civ.App.—Corpus Christi 1976, no writ history).

In connection with our conclusion that the third and fourth points are multifarious, it is significant to note that even though the appellant had notice of the fact that appellees had challenged the points on the ground that they were too general to be considered on appeal, appellant made no effort to amend its brief so as to comply with the briefing rules. While it has long been the policy of this court to indulge in a liberal construction in favor of the sufficiency of a brief, we do not believe such liberality should be extended to points so multifarious and general as those presented here. Accordingly, appellant's third and fourth points are overruled.

Under the first and second points appellant attacks the trial court's conclusions of law. By the first point it is contended that "the trial court erred in entering conclusions of law Nos. 1 and 2 because there is, in the record, written documentation sufficient to establish a contract between the plaintiff and defendant as required under the terms of the statute of frauds set forth in sec. 2.201 of the Texas Business & Commerce Code." By the second point of error, appellant contends that "the trial court erred in entering conclusions of law No. 3 because the time of the delivery of the steel products was not a condition of the contract in question." We find no merit in either of these points.

Rules 300 and 301, Tex.R.Civ.P., require among other things that the judgment must conform to the findings of fact, but we are not aware of any rule that requires the judgment to conform to the conclusions of law. If the trial court renders an otherwise correct judgment, it will not be set aside because it made one or more incorrect conclusions of law. Where the findings of fact are sufficient to support the judgment and are not against the overwhelming weight and preponderance of the evidence, the judgment will be upheld even though the trial judge erred in some of his conclusions of law. *Mercedes Dusting Service, Inc. v. Evans*, 353 S.W.2d 894, 895–96 (Tex.Civ.App.—San Antonio 1962, no writ history); *Golden State Mutual Life Ins. Co. v. Adams*, 340 S.W.2d 77, 79–80 (Tex.Civ.App.—Fort Worth 1960, no writ history); *Redburn v. Shield*, 338 S.W.2d 323, 327 (Tex.Civ.App.—San Antonio 1960, writ dism'd); 4 McDonald, Texas Civil Practice, sec. 16.05 p. 14 (1971 rev.).

Stated in a slightly different manner, the rule is that where the trial court's findings of fact are supported by the evi-

dence and are not against the overwhelming weight and preponderance of the evidence, it is the duty of the appellate court to uphold the judgment on any theory of law applicable to the case, even though some or all of the trial court's conclusions of law are found to be erroneous. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939); *Pope v. American National Ins. Co.*, 443 S.W.2d 377, 381 (Tex. Civ.App.—Tyler 1969, writ ref'd n.r.e.); 4 Texas Digest, Appeal & Error ☞854(2).

In the instant case the trial court found that the appellant failed to resell the steel products in a reasonably commercial manner in accordance with sec. 2.706 of the Texas Business & Commerce Code because appellant failed to sell the steel until long after it had arrived at the port of Houston. The trial court further found that appellant failed to adduce any evidence as to the market price of the steel at the time it was resold as required by sec. 2.708 of the Texas Business & Commerce Code and that as a result appellant failed to establish that it suffered any damages as a result of the alleged breach of contract. Since we have left the trial court's findings of fact undisturbed, the foregoing findings of fact are binding on this court. Thus, based on the foregoing findings, the trial court was authorized to render a take-nothing judgment against appellant both on the theory that appellant failed to timely resell the steel in a reasonably commercial manner and also that it failed to discharge its burden of proving the market price of the steel at the time of its resale so as to show that it suffered damages. Thus, it is not necessary to determine whether the particular conclusions of law complained of were incorrect because, even if they were, they would afford no basis for reversing the judgment which was supported by facts found by the trial court to be sufficient to deny a recovery on a different theory. *Mercedes Dusting Service, Inc. v. Evans*, supra.

Finally, appellant contends in the fifth and sixth points that the trial court erred in entering conclusions of law Nos. 1 through 5 because there is no evidence in the record to support the same or that such conclusions are against the great weight and preponderance of the evidence. These points are multifarious and too general, or both, to be considered for the same reasons we have heretofore discussed under appellant's third and fourth points of error. Accordingly, the points are overruled.

The judgment is affirmed.